UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RANDY WHITE,

                Plaintiff,         **DECISION AND ORDER**

       v.                               1:19-CV-00206 EAW

ROBERT MONTESANO and
BERNARD WILLIAMS,

                Defendants.
_____

# INTRODUCTION

Plaintiff Randy White ("Plaintiff") filed this action against defendants Robert Montesano ("Montesano") and Bernard Williams ("Williams") (collectively "Defendants"), who are both parole officers employed by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. 1). Plaintiff alleges claims pursuant to 42 U.S.C. §§ 1983, 1988, along with various state law claims. (*See id.*). Presently before the Court is Defendants' partial motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 21). For the following reasons, Defendants' motion is denied.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint. (Dkt. 1). As is required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

On the evening of February 27, 2018, Plaintiff drove his friend Dwayne Gordon ("Gordon") home before Gordon's court appointed curfew as he was a parolee under DOCCS supervision. (*Id.* at ¶ 10). After Gordon exited Plaintiff's vehicle, an unidentified individual, who Plaintiff later learned was Montesano, approached the vehicle, aimed a flashlight in Plaintiff's face, and demanded that Plaintiff produce identification. (*Id.* at ¶ 11). Plaintiff asked Montesano to identify himself. (*Id.* at ¶ 12). Montesano refused and again demanded that Plaintiff show his identification and turn off the vehicle. (*Id.*). Plaintiff told Montesano that he was not going to turn off his engine as he needed to get home to his children, but "in an effort to diffuse the situation," Plaintiff offered to show his identification. (*Id.*).

As Plaintiff went to retrieve his identification from his pants pocket, Montesano falsely claimed that Plaintiff had a gun. (*Id.* at ¶ 13). Immediately thereafter, another individual, who Plaintiff later identified as Williams, aggressively entered Plaintiff's vehicle through the passenger side and shot Plaintiff in the leg. (*Id.* at ¶ 14). Williams then threatened to shoot Plaintiff again in the head. (*Id.* at ¶ 15). Because both Williams and Montesano had not identified themselves as members of law enforcement, Plaintiff, fearing for his well-being and safety, attempted to drive away. (*Id.* at ¶ 16). While threatening to shoot Plaintiff in the head, Williams repeatedly punched Plaintiff in his face, causing Plaintiff's vehicle to collide with an unidentified object. (*Id.* at ¶ 17). During this

interaction, Plaintiff did not threaten or use physical force against Defendants, and repeatedly stated that he did not possess a gun. (*Id.*).

Plaintiff was eventually able to drive away from Defendants. (*Id.* at ¶ 18). Defendants then made allegedly false claims to the Buffalo Police Department about Plaintiff having engaged in criminal wrongdoing. (*Id.*). Plaintiff picked up his wife at her place of employment and drove to Mercy Hospital. (*Id.* at ¶ 19). On their way to Mercy Hospital, Plaintiff and his wife were stopped by members of the Buffalo Police Department who then arrested Plaintiff "without any probable cause." (*Id.*).

While detained at the Buffalo Police Department, Plaintiff was taken to Erie County Medical Center where his wounds were treated. (*Id.* at ¶ 20). After being treated, Plaintiff was transported to Buffalo Police Headquarters where he was detained and interrogated. (*Id.* at ¶ 21). During this time, Plaintiff was in significant pain and continued to bleed as a result of his gunshot wound. (*Id.*). Approximately 45 minutes later, Plaintiff was transported back to Erie County Medical Center for further medical treatment. (*Id.* at ¶ 22). Plaintiff was ultimately released and no criminal charges were brought. (*Id.* at ¶ 23).

## DISCUSSION

### I.  Legal Standard

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the

allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.     Plaintiff's State Law Claims

Plaintiff's fourth and fifth causes of action allege state law claims against Defendants. (Dkt. 1 at 6-9). Defendants argue that these claims should be dismissed because they are barred by New York State Correction Law § 24 and Executive Law § 259-q. (Dkt. 21-1 at 3-4). In response, Plaintiff argues that there is a question of fact as to whether Defendants were acting within the scope of their employment precluding dismissal of such claims at this stage of the proceedings. (Dkt. 24 at 9-11). The Court agrees.

Courts in this Circuit have interpreted both § 24 and § 259-q analogously. *See Sloane v. Getz*, No. 00 Civ. 4708(DLC), 2001 WL 504879, at *5 (S.D.N.Y. May 10, 2001) ("There is no reason to interpret Section 259-q differently from Section 24 with respect to immunity from suit."); *Oliver v. Cuttler*, 968 F. Supp. 83, 90 (E.D.N.Y. 1997) (noting that § 259-q is "word for word[] identical" to § 24). Section 259-q provides, in pertinent part:

> 1.     No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the board of parole or former division of parole, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2.     Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the board of parole or former division of parole shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Exec. Law § 259-q.

"New York Correction Law § 24 provides that New York courts lack jurisdiction over claims for money damages brought against . . . Parole officials in their personal capacities arising from conduct within the scope of their employment." *Hassell v. Fischer*, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015) (footnote omitted), *aff'd*, 879 F.3d 41 (2d Cir. 2018). Specifically, § 24 provides, in pertinent part:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correct. Law § 24(1). Section 24(2) has been interpreted to "preclude[] the assertion of [such claims] . . . in any court, including the federal courts." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996).

In order to determine whether immunity is available under § 24 or § 259-q, courts look to factors associated with New York's scope of employment analysis. *See, e.g.*, *Ierardi*, 119 F.3d at 187 n.3 (discussing how scope of employment analysis "has been routinely employed by New York State courts in determining the parameters of protections afforded by Section 24"); *Ficklin v. Rusinsko*, 351 F. Supp. 3d 436, 433-44 (W.D.N.Y. 2019) (applying scope of employment analysis in determining whether § 24 bars plaintiff's claims); *Johnson v. N.Y. State Dep't of Corr. Servs. & Cmty. Supervision*, No. 11-CV-079S, 2013 WL 5347468, at *3 (W.D.N.Y. Sept. 23, 2013) (discussing how scope of employment analysis "has been routinely employed by New York State courts in determining the parameters of protections afforded by Section 24"); *Roberts v. Lapp*, No.

2-CV-746S, 2005 WL 578159, at *6-7, (W.D.N.Y. Mar. 9, 2005) (applying scope of employment analysis in determining whether § 259-q bars plaintiff's claims); *Sloane*, 2001 WL 504879, at *5 (dismissing claims pursuant to § 259-q upon finding parole officer defendants were acting within the scope of their employment); *Oliver*, 968 F. Supp. at 91 (discussing scope of employment analysis in determining whether claims were barred by § 259-q). These factors include:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979). "[C]onduct which occurs during the course of employment will not be considered to have occurred within the scope of employment if, for purely personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties." *Gore v. Kuhlman*, 217 A.D.2d 890, 891 (3d Dep't 1995). However, "an employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.'" *Cepeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987) (quoting *Riviello*, 47 N.Y.2d at 302).

Defendants argue that application of the *Riviello* factors would demonstrate that "Defendants were acting within the bounds of their employment, even if done so improperly" as "[i]t is undisputed that the defendants are parole officers, were on duty, were present at the home of a parolee and the plaintiff was in the company of said parolee."

(Dkt. 26 at 3). According to Defendants, "[o]n these facts, it is clear that where a parolee exits a parked vehicle at his home at curfew, it was generally foreseeable that the defendants, in an effort to monitor the actions and social contacts of the parolee, would engage with those in the parolee's company. Moreover, once the presence of a deadly weapon, *i.e.* a gun, was perceived, it was reasonably foreseeable that the officers would need to engage in the use of physical force." (*Id.* at 3-4). The Court disagrees.

Upon application of the *Riviello* factors, the Court concludes that dismissal is not warranted at this stage of the proceedings. Plaintiff asserts that at the time of the incident, he was not "in the custody and/or supervision of the Defendants." (Dkt. 24 at 9). Further, Plaintiff alleges that the incident occurred when he was alone in the car, sometime after Gordon, Defendants' parolee, had exited Plaintiff's vehicle. (*See* Dkt. 1 at ¶ 11). Contrary to Defendants' assertions, there is a question of fact as to whether Defendants had acted pursuant to their "investigative powers to gather information about the parolee's activities, environment and social contacts." *Ficklin*, 351 F. Supp. 3d at 444; *compare Oliver*, 968 F. Supp. at 91 (denying motion for summary judgment where defendant parole officer pursued and detained plaintiff a non-parolee because there was a question of fact as to whether the "State Division of Parole may . . . have reasonably anticipated that the defendant would pursue and detain a non-parolee driver for a traffic violation"), *with Sloane*, 2001 WL 504879, at *1, 5 (dismissing state law claims arising out of plaintiff's

assault by parole officer defendants that occurred at the Mount Vernon Parole Office where plaintiff had reported to his probation officer).[1]

Defendants cite this Court's previous decision in *Ficklin* in support of their argument. (Dkt. 26 at 3). However, *Ficklin* is easily distinguishable. There, the plaintiff was released on parole and was prohibited from driving a vehicle while under parole supervision. *Ficklin*, 351 F. Supp. 3d at 441, 444-45. Upon the plaintiff entering the driver's side of a vehicle, parole officer defendants arrested him. *Id.* at 441. The Court dismissed the plaintiff's claims against the defendants because under these facts, "the Division [of Parole would have] reasonably anticipate[d] that one of its officers would arrest a parolee if the parolee was engaging in conduct that created a reasonable cause to believe he had violated his parole conditions." *Id.* at 445. Here, by contrast, Plaintiff alleges that he was not in the custody or supervision of Defendants. Further, at this stage of the proceedings, there is no evidence that Defendants believed Gordon had violated a condition of parole and that they believed Plaintiff was somehow involved requiring investigation of Plaintiff. As such, *Ficklin* is inapposite.

---

[1] The Court also notes that the question of whether a defendant's conduct falls within the scope of his employment is a fact-intensive inquiry, ordinarily reserved for the jury. *See Girden v. Sandals Intern.*, 262 F.3d 195, 205 (2d Cir. 2001) ("Whether an employee was acting within [the scope of his or her employment] requires a fact-intensive inquiry . . . ordinarily for the jury. . . ."); *Riviello*, 47 N.Y.2d at 303 ("[B]ecause the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual consideration, the question is ordinarily one for the jury.").

## **CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss (Dkt. 21) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:	June 11, 2020
	Rochester, New York